UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
GINA WILLIAMS,

                              Plaintiff,

                - against -

THE NEW YORK CITY HOUSING
AUTHORITY and TEAMSTERS LOCAL 237,

                             Defendants.
----------------------------------------------------------- X

**<u>MEMORANDUM DECISION AND ORDER</u>**

No. 19-cv-918 (BMC) (LB)

**COGAN**, District Judge.

       Plaintiff *pro se*, a public employee, brings this action under 42 U.S.C. § 1983 and N.Y. Civ. Serv. L. § 75[1] against her public employer (the New York City Housing Authority), and her public employees' union (City Employees Union Local 237, IBT), challenging the "local hearing" disciplinary provision of the collective bargaining agreement to which defendants are parties as violating her right to due process of law. She contends that due process as well as § 75 entitles her to legal representation, administration of oaths to witnesses, a transcript of the proceedings, and appellate rights, none of which are provided for or allowed in a local hearing under the CBA.

       Plaintiff has already raised this identical claim in state court and it was rejected. Collateral estoppel prevents her from raising it again here. In addition, the claim has no merit. Defendants' motions to dismiss are therefore granted. NYCHA's motion for an anti-suit

---

[1] In light of plaintiff's *pro se* status, the Court construes plaintiff as bringing claims under N.Y. Civ. Serv. L. § 75 even though the complaint cited different provisions of this statute that have little relationship to her claims instead of citing to § 75.

injunction is denied, but plaintiff is cautioned that eight lawsuits against her employer is enough, and she may well be enjoined from suing without court permission if she does it again.

## BACKGROUND

Plaintiff is employed as a building superintendent by NYCHA and because of that, she is represented by Local 237. She has had two grievances brought against her that are the subject of this action. First, in June, 2017, she participated in a local hearing over an undescribed work incident and received a reprimand.[2] Second, at the time she filed this complaint in February, 2019, she expected to participate in a local hearing for some other undescribed work incident on April 10, 2019. She moved for a preliminary injunction to prevent the April 10th hearing from going forward, which I denied. I have not been advised if the hearing did in fact go forward nor the result if it did.

Section 43 of the CBA (annexed to the complaint) sets forth "Disciplinary Procedures" by which NYCHA can impose minor sanctions on an employee. Subsection (c) provides for "Local Hearings," which might seem like the first step in the process except that the employee must first be "instructed and counseled in writing" before NYCHA can proceed to a local hearing. The subsection defines the jurisdiction of the local hearing tribunal as covering "relatively minor infraction(s)."

For the local hearing, the arbitrator/mediator is neutral and is selected by both the employer and the union. The employee is entitled to ten days' notice of the hearing. The employee may have a union representative attend but neither the employee nor the employer may have an attorney attend. Either side can call witnesses and introduce evidence, but the rules of

---

[2] It appears from the record of the local hearing (a summary, not verbatim) that it had something to do with a charge that plaintiff failed to address a sewage or trash problem at her building, for which plaintiff received a reprimand.

2

evidence do not apply, and a formal transcript is not required.  At a first local hearing, penalties range from a formal reprimand, to up to a $100 fine, to six days of either suspension without pay or loss of up to six days of annual leave; at a second local hearing, the six days are increased to ten days; and a third or subsequent local hearing increases the ten days to twelve days plus a $100 fine.  The results of the hearing are binding and not subject to appeal or review by either the employer or the union.

In October, 2017, plaintiff commenced an Article 78 proceeding *pro se* in New York County Supreme Court against NYCHA complaining about the procedures for her local hearing in July of that year.  As in her present complaint, her Article 78 petition complained that her due process rights under 42 U.S.C. § 1983 and § 75 were violated by the absence of a stenographer or recording of the hearing, her inability to bring her own attorney, the failure to administer oaths to witnesses, and the lack of a right to appeal.  She requested annulment of the administrative decision and a new hearing which would provide her with the protections that she argued were lacking.

On April 10, 2018, the New York County Supreme Court denied the Article 78 petition.  In a short but reasoned order, the court stated: "Petitioner … challenges the Informal Procedure and alleges that it violates her due process rights.  … [H]owever, respondent shows that petitioner received all of the process required by the CBA."  Moreover, the Article 78 court noted that in <u>Antinore v. State of New York</u>, 40 N.Y.2d 921, 389 N.Y.S.2d 576 (1976), <u>aff'g and adopting opinion with modifications</u>, 49 A.D.2d 6, 371 N.Y.S.2d 213 (4th Dep't 1975), the New York Court of Appeals held that a CBA can replace rights provided for in § 75.

There is no indication in the record before me that plaintiff appealed the dismissal of her Article 78 petition.

# DISCUSSION

## I. Motions to Dismiss under Rule 12(b)(6)

Both NYCHA and Local 237 have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). The standard of review under Rule 12(b)(6) has been too often repeated to require extended discussion. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal citation omitted). To determine if dismissal for failure to state a claim is appropriate, the Court must "accept as true all facts alleged in the complaint" and "draw all reasonable inferences in favor of the plaintiff." Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007). When considering a motion to dismiss, "[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims." Id. (internal quotation marks omitted). Although the Court must "take all of the factual allegations in the complaint as true" for the purpose of a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678.

In ruling on whether to dismiss a complaint under Rule 12(b)(6), the Court is "generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference." Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002). The Court may also consider documents that,

although not attached to the complaint as exhibits or incorporated by reference, are "integral" to the pleading. Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).

Moreover, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). Such pleadings are "to be liberally construed," Ahlers v. Rabinowitz, 684 F.3d 53, 60 (2d Cir. 2012), and interpreted "to raise the strongest arguments that they suggest." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).

### A. Issue Preclusion

"The doctrine of collateral estoppel [also known as issue preclusion] prevents a plaintiff from relitigating in a subsequent proceeding an issue of fact or law that was fully and fairly litigated in a prior proceeding." Purdy v. Zeldes, 337 F.3d 253, 258 (2d Cir. 2003); see also Flaherty v. Lang, 199 F.3d 607, 612 (2d Cir. 1999). "Collateral estoppel applies only against a party to a previous adjudication and that party's 'privies.'" Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Intl. B.V. v. Schreiber, 327 F.3d 173, 184 (2d Cir. 2003). Collateral estoppel may be raised in a Rule 12(b)(6) motion, provided it is based on the complaint, documents attached or incorporated within it, or public records that can be judicially noticed. See Techno Marine SA v. Giftports, Inc., 758 F.3d 493, 498 (2d Cir. 2014).

"Under federal law, collateral estoppel applies when '(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the

5

resolution of the issue was necessary to support a valid and final judgment on the merits.'" Purdy, 337 F.3d at 258 (footnotes and citation omitted); see also Harrison v. Lutheran Med. Ctr., 468 F. App'x 33, 35 (2d Cir. 2012); Marvel Characters, Inc. v. Simon, 310 F.3d 280, 288-89 (2d Cir. 2002); Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 86, 91 (2d Cir. 1997); Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 368 (2d Cir. 1995).

All of these criteria are satisfied here by reason of the judgment in the Article 78 proceeding – plaintiff raised the same issue; it was actually litigated and decided; plaintiff had a full and fair opportunity to litigate the issue; and the Article 78 court's decision was not dictum.

In light of plaintiff's *pro se* status, I have considered whether there is any way for her to avoid the application of collateral estoppel. There are two conceivable theories. The first is that because the Article 78 proceeding only concerned the June 20, 2017 local hearing and this case concerns both that local hearing and the April 10, 2019 local hearing, the scope of this lawsuit is sufficiently broader so that the Article 78 proceeding is not dispositive as to the latter hearing. I reject this theory, however, because the underlying subject matter of the two local hearings is immaterial to the issue that plaintiff raised in the Article 78 proceeding. The issue raised here and there is whether plaintiff's purported due process and statutory rights can be modified by the collective bargaining agreement. The Article 78 court held that they could. Collateral estoppel precludes me from reconsidering that question.

The other potential issue is based on the fact that only NYCHA, not Local 237, was a party to the Article 78 proceeding, which raises the possibility that plaintiff could continue her claim against Local 237. However, the doctrine of non-mutual defensive collateral estoppel "precludes a plaintiff from relitigating identical issues by merely switching adversaries." Lipin v. Hunt, No. 14-cv-l081, 2015 WL 1344406, at *5 (S.D.N.Y. Mar. 20, 2015) (quoting Parklane

Hosiery Co., Inc. v. Shore, 439 U.S. 322, 329 (1979)).  Arguably, plaintiff should have joined Local 237 in the Article 78 because it is also a party to the CBA and any procedural accommodations that are required by law affect its bargaining position as much as that of NYCHA, and are just as much its responsibility in protecting its members as that of NYCHA. But whether she should have joined Local 237 in the Article 78 or not, she cannot proceed against Local 237 now.[3]

### B. Failure to State a Claim

Even if collateral estoppel did not bar plaintiff's claim, it would fail of its own accord. Neither under the Constitution nor § 75 is there anything wrong with the local hearing provision of this CBA.

First, as the Article 78 court noted, the New York Court of Appeals has expressly held that a public union is free to modify rights provided by § 75 as part of the collective bargaining process.  See Antinori.  The New York Legislature subsequently codified Antinori, amending N.Y. Civ. Serv. L. § 76(4) in 1999 to provide that §§ 75 and 76 "may be supplemented, modified, or replaced by agreements negotiated between the state and an employee organization...".  That ends the inquiry as to whether plaintiff's rights were violated under state law.

Second, the due process clause does not require incorporation of the protections that plaintiff demands in a collective bargaining agreement where, as here, the CBA requires a pre-sanction hearing and the maximum penalty is a twelve-day suspension and a $100 fine.  The

---

[3] I note that unlike NYCHA, Local 237 did not specifically move to dismiss on collateral estoppel grounds.  But collateral estoppel can be raised *sua sponte* by the Court, see Shaw Family Archives Ltd. v. CMG Worldwide, Inc., No. 05 Civ. 3939, 2008 WL 4127830, at *18 (S.D.N.Y. Sept. 2, 2008) (collecting cases), and plaintiff was on notice of the argument since NYCHA moved on that basis.

7

potential infringement on plaintiff's property interest (her job with its accompanying salary and benefits) is small enough so that some reasonable pre-sanction hearing is more than sufficient to satisfy due process concerns. As the Supreme Court held in <u>Cleveland Bd. of Educ. V. Loudermill</u>, 470 U.S. 532, 542-43 (1985), where it invalidated a statute providing for termination of a public employee without a pre-termination hearing, due process requires courts to balance the competing interests at stake. The Court defined the interests in <u>Loudermill</u> as including "the private interests in retaining employment, the governmental interests in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous termination." <u>Id</u>.

Here, there is no risk of termination as a result of a local hearing, and, also unlike <u>Loudermill</u>, the important overlay of collective bargaining has to be factored into the balance. The need of public employers like NYCHA and public employee unions to have a prompt and efficient procedure for dealing with minor employee transgressions is paramount. This is particularly true when as part of the give-and-take of the collective bargaining process, the parties agreed to the local hearing procedure in exchange for a panoply of other rights and benefits. "When the plaintiff received the benefits of the collective bargaining contract, he must also accept its disadvantages, <u>i.e.</u>, he must, so to speak, accept the bitter with the sweet." <u>Morris v. Lindau</u>, 196 F.3d 102, 115 (2d Cir. 1999).

I don't hear plaintiff complaining about her seniority rights, her employer's pension contributions, or her vacation time, all of which Local 237 obtained on her behalf in the CBA. The fact that Local 237 couldn't get or didn't want a stenographer at local hearings is of no importance. See <u>Costello v. Town of Fairfield</u>, 811 F.2d 782, 786 (2d Cir. 1987); <u>Spencer v. New York City Transit Authority</u>, No. 95-cv-4779, 1999 WL 51814, at *10 (E.D.N.Y. Jan. 14,

1999) ("It is firmly established in New York that unions may waive individual employees' constitutional rights, including due process requirements, through collective bargaining agreements."); Grandi v. New York Transit Authority, 977 F. Supp. 590 (E.D.N.Y. 1997); Villara v. City of Yonkers Police Dept., 1997 WL 399660, at *2 (S.D.N.Y. July 15, 1997) ("[E]ven assuming, *arguendo*, that Section 75 would have otherwise afforded plaintiff enhanced demotion procedures beyond those that were actually afforded and that the jury found constituted due process, such enhanced procedures under Section 75 were waived by the Collateral Bargaining Agreement between defendant and plaintiff's union in favor of alternative disciplinary procedures outlined in that agreement."). Indeed, the maximum sanction from a local hearing is such a minor compromise of plaintiff's property interest that even a prompt post-sanction hearing of the type specified in the CBA would probably satisfy due process. See Szoke v. Carter, 165 F.R.D. 34, 37-38 (S.D.N.Y. 1996).

## II.     Anti-suit Injunction

NYCHA additionally requests that, in light of plaintiff's litigation history against it, this Court enter an order enjoining plaintiff from filing further actions against it without leave of the Court. It is not just this case, even coupled with the prior Article 78 action, that gives rise to this request. NYCHA has submitted evidence that over the last twenty years – yes, twenty years – plaintiff has filed eight lawsuits against NYCHA in state and federal courts, six of which were dismissed on motions, and four of those six were pursued unsuccessfully on appeal. The eight include this lawsuit, which will now be dismissed, and another currently pending in the Southern District of New York. NYCHA also has asserted that plaintiff has filed a number of administrative claims that have also failed.

There is a raw irony in plaintiff's complaint that the CBA has compromised her state law and constitutional rights. The fact is that with a contentious employment relationship like this, there is some likelihood that a non-unionized worker in the private sector would be long gone. Plaintiff is complaining about the CBA but it is possible that the CBA is a big reason that she is still employed at NYCHA.

However, NYCHA has not made a sufficient showing for the relief it seeks. First of all, the mere fact of six or seven failed lawsuits in various courts over twenty years, standing alone, does not satisfy the standard of utter lack of merit in each or most of the lawsuits required for such extreme relief.

The instant lawsuit, multiplied eight times, certainly would. It is a precise duplicate of the failed Article 78 proceeding, and thus wasted everyone's time. And I dismissed the one prior lawsuit that plaintiff brought against NYCHA in this district, <u>Williams v. New York City Housing Authority</u>, No. 12-cv-825 (E.D.N.Y.), which the Second Circuit affirmed. It was equally meritless but required discovery to get to summary judgment. These two cases give some support to NYCHA's argument that plaintiff "will not stop litigating claims against NYCHA – and wasting NYCHA's and the Court's resources – until the Court orders her to obtain leave of the Court to file any complaint against NYCHA." But they are only two cases in this district, and NYCHA has not told me anything about the others, let alone convinced me that the others it has identified were as without merit as the two that this Court has heard.

Second, this deficiency leads to the observation, as noted, that there have only been two lawsuits in this district. Of the six others, four were commenced in New York County State Supreme Court, two of which NYCHA removed to the Southern District of New York and two

of which were commenced in the Southern District of New York. The other two stayed in and were dismissed in New York County Supreme Court.

Generally, anti-suit injunctions are limited to the court in which the abuse occurred. I cannot tell if NYCHA expects this Court to enjoin plaintiff from suing it in any court, but such an injunction would be presumptuous, at least, as courts are entitled to choose their own level of tolerance before issuing such injunctions, and I am not going to dictate to another court which filings it should and should not accept. Even in the case cited by NYCHA, <u>Iwachiw v. N.Y. State Dept. of Motor Vehicles</u>, 396 F.3d 525 (2d Cir. 2005), the Second Circuit affirmed an injunction against the plaintiff that operated only in the Eastern District of New York. (I am also aware of instances in which the Second Circuit has barred litigants from filing in that Court without prior leave, but I have never seen it enjoin anyone from filing anywhere within the Circuit, which, at least, would not be presumptuous because of its supervisory jurisdiction over courts within the Circuit).

Viewed geographically or jurisdictionally, this Court is not the appropriate one to issue such an injunction. The epicenter of plaintiff's abusive filings – if they are abusive filings – is New York County, and really the New York County Supreme Court. I see no reason for me to act on the basis of the mere two cases filed here.

Finally, the same rationale that permits NYCHA and Local 237 to modify in their CBA whatever constitutional and state law rights plaintiff might have disinclines me to intervene in the employment relationship by issuing an anti-suit injunction. As noted above, the consequences to an employee in the private sector for the conduct of which NYCHA complains could well be serious. NYCHA is really saying that it has no appropriate remedy under the CBA against an employee who deluges it with frivolous litigation. But if NYCHA can't get that

11

protection under its CBA, it is not up to this Court to supplement the terms of the CBA unless the burden is not only on NYCHA, but on this Court. Two cases are not enough for that.

Nevertheless, plaintiff is cautioned that the relief NYCHA seeks is available under the law. If she continues to file actions as lacking in merit as the two that have come before me, she takes the risk that some court, whether this one or some other, will bar her from filing any others without leave of court.

## CONCLUSION

NYCHA's motion to dismiss [24] is granted, except to the extent it seeks an anti-suit injunction, which is denied. Local 237's motion to dismiss [12] is granted. The Clerk is directed to enter judgment, dismissing the complaint. Although plaintiff paid the filing fee to commence this action, the Court certifies that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status for purposes of appeal is denied. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       April 22, 2019